SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Anthony Miranda (A-67-21) (086773)**

**Argued November 29, 2022 -- Decided May 3, 2023**

**PATTERSON, J., writing for a unanimous Court.**

In this appeal, the Court reviews the Appellate Division's decision affirming the trial court's denial of defendant Anthony Miranda's motion to suppress weapons found in a warrantless search.

On July 27, 2019, N.D. and her adult daughter and son appeared at the headquarters of the Borough of Highlands Police Department. They spoke with the two officers on duty that day, Captain George Roxby and Detective Nicholas Riker. N.D. told the officers that she and defendant had been dating since 2015. She stated that defendant had assaulted her and showed them photographs of injuries. She presented to the officers screenshots of threatening text messages that she attributed to defendant. N.D. reported that defendant had brandished two guns in front of her and her children. She said that defendant kept the guns in a "black drawstring-type bag" in the residential trailer in which she, her children, and defendant lived.

The officers contacted a judge, who entered a temporary restraining order against defendant and a search warrant for the residential trailer where defendant and N.D. lived. Roxby and Riker arrived at the residential trailer and knocked on the door. Defendant answered, and Roxby arrested him.

Riker transported defendant to the police station. Roxby entered the residential trailer to execute the search warrant but found no weapons. He and N.D. joined N.D.'s children and another adult female family member outside. Roxby's bodycam recorded the family member saying that "[h]e has a storage." Roxby asked N.D., "you keep your stuff in there also, right?" N.D. answered affirmatively.

Roxby walked up the steps to the storage trailer. The door to the storage trailer was open, and the screen door was closed but unlocked. Roxby opened the screen door and entered the storage trailer, followed by N.D. Referring to a black bag that was initially off-camera, N.D. exclaimed, "[t]hat's it." Roxby then opened the bag. He removed a police badge, two guns, and ammunition. Roxby took the weapons and ammunition to police headquarters and secured them.

1

Defendant was indicted, and he moved to suppress the weapons found in the black bag in the storage trailer. The trial court denied defendant's motion, concluding that N.D. had consented to the search of the storage trailer and the seizure of the weapons found in the black bag in that trailer, and that the black bag containing the weapons was in plain view. The Appellate Division affirmed. The Court granted defendant's petition for certification. 251 N.J. 502 (2022).

**HELD:** N.D. had apparent authority to consent to the officer's search of the storage trailer. However, the exigent-circumstances exception to the warrant requirement does not justify the officer's search of the black bag or his seizure of the weapons in that bag, and the denial of defendant's motion to suppress constituted error.

1. The State bears the burden to prove that a warrantless search was constitutional because it falls within an exception to the warrant requirement. Here, the State invokes the doctrine of apparent authority to consent as the basis for Roxby's search of the storage trailer and the exigent-circumstances exception to justify the search of the black bag and the seizure of the weapons. (pp. 15-16)

2. In certain settings, a person other than the defendant may validly consent to the search of the defendant's home or property. A third party's authority to consent rests on mutual use of the property by persons generally having joint access or control. An officer may, depending on the circumstances, rely on the apparent authority of a person consenting to a search. Apparent authority arises when a third party (1) does not possess actual authority to consent but appears to have such authority and (2) the law enforcement officer reasonably relies, from an objective perspective, on that appearance of authority in view of the facts and circumstances known at the time of the search. (pp. 16-18)

3. The Court reviews the information known to Roxby about N.D.'s nexus to the storage trailer when he entered and searched it, including N.D.'s affirmations that she also kept belongings in the trailer; text messages attributed to defendant suggesting defendant considered the residential trailer to be N.D.'s, that N.D. had lived in that trailer and the community longer than defendant had, and that he planned an imminent move out of her home; and N.D.'s access to the storage trailer. Considered in tandem, those factors support an objectively reasonable conclusion that N.D. had authority to consent to a search of the storage trailer. (pp. 18-20)

4. That N.D. had apparent authority to consent to the search of the storage trailer does not resolve the question whether Roxby's search of the bag found inside that trailer and his seizure of the weapons were constitutional, however. A third party who has common authority over the premises might nevertheless lack common authority over the items therein. (pp. 20-21)

2

5.  Here, the State relies on the exigent-circumstances exception to the warrant requirement.  That exception typically applies when there was an objectively reasonable basis to believe that lives might be endangered or evidence destroyed by the delay necessary to secure a warrant.  The Court has identified a non-exclusive set of factors to be considered in determining whether exigent circumstances existed at the time of the disputed search.  The determination is fact-sensitive and requires the court to assess the totality of the circumstances.  (pp. 21-23)

6.  The first factor -- the seriousness of the crime under investigation -- favors the State's position in this case.  Roxby was investigating allegations of domestic violence, "a serious crime against society."  N.J.S.A. 2C:25-18.  The second factor -- the urgency of the situation faced by the officers -- does not favor the State's position.  When Roxby entered the storage trailer, defendant was under arrest and detained at the Police Department for processing pending his transfer to county jail.  There was no realistic basis for concern that if Roxby paused to contact a judge and requested a warrant, defendant would be in a position to retrieve his weapons from the storage trailer pending the judge's issuance of that warrant.  And if Roxby was called away for an emergency while he waited for a warrant, he could have ensured that the storage trailer was locked during his absence.  The third factor -- the time that it would have taken to secure a warrant -- does not favor either party's position because the record includes no evidence of the amount of time that process would have taken.  The fourth factor -- the threat that evidence would be destroyed or lost or people would be endangered unless immediate action was taken -- does not support a finding of exigent circumstances given that defendant was under arrest, and there is no evidence in the record that he could have secured the assistance of a third party who had a key to the storage trailer.  The fifth factor -- information that the suspect was armed and posed an imminent danger -- similarly weighs against a finding of exigency.  The sixth factor -- the strength or weakness of the probable cause relating to the item to be searched or seized -- supports the State's position, given the statements of N.D. and her children.  (pp. 24-27)

7.  Weighing those factors, the Court concludes that the State did not prove its claim that exigent circumstances justified the warrantless search of the black bag and the seizure of the weapons.  Defendant's motion to suppress the weapons seized through that unlawful search should therefore have been granted.  Because those weapons constituted the central evidence against defendant on the charge of unlawful possession of a weapon, defendant's conviction must be vacated.  (p. 27)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER; JUSTICES PIERRE-LOUIS, WAINER APTER, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion.  JUSTICE SOLOMON did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-67 September Term 2021

086773

State of New Jersey,

Plaintiff-Respondent,

v.

Anthony Miranda,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| November 29, 2022 | May 3, 2023 |

James K. Smith, Jr., Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; James K. Smith, Jr., of counsel and
on the briefs).

Monica do Outeiro, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
respondent (Raymond S. Santiago, Monmouth County
Prosecutor, attorney; Monica do Outeiro, of counsel and
on the briefs).

Alexander Shalom argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation,
attorneys; Alexander Shalom and Jeanne LoCicero, on
the brief).

1

Jason LeBoeuf argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Zeigler & Resnick, and Law Offices of Robert J. De Groot, attorneys; Oleg Nekritin, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we review the Appellate Division's decision affirming the trial court's denial of defendant Anthony Miranda's motion to suppress weapons found in a warrantless search.

Borough of Highlands police officers responded to a report that defendant had threatened and assaulted N.D., a woman whom he had been dating for several years. N.D. told the officers that defendant stored weapons in a black bag in a closet in the trailer where they lived. A judge issued a warrant to search the trailer for the weapons. After arresting defendant, an officer searched the trailer, but found no weapons.

N.D. and her adult daughter then informed the officer that defendant stored some of his belongings in a nearby storage trailer and that they also kept property in the storage trailer. With N.D.'s consent, the officer conducted a warrantless search of the storage trailer, found and opened the bag containing the weapons, and seized the weapons.

Defendant moved to suppress the evidence seized by the officer. The trial court denied the motion to suppress on the ground that N.D. had apparent

2

authority to consent to the search of the storage trailer. The court did not address whether the officer's search of the black bag was justified by an exception to the warrant requirement.

Defendant pled guilty to one count of second-degree unlawful possession of a weapon but appealed the trial court's denial of his motion to suppress. The Appellate Division affirmed the trial court's determination that N.D. had apparent authority to consent to the officer's search of the storage trailer. The Appellate Division found that N.D.'s apparent authority to consent to a search of the storage trailer justified the search of the black bag as well.

We granted defendant's petition for certification. Before this Court, the State does not contend that N.D. had apparent authority to consent to the search of the black bag. It argues instead that the exigent-circumstances exception to the warrant requirement justified the search of the bag and the seizure of the weapons it contained.

We concur with the trial court and the Appellate Division that N.D. had apparent authority to consent to the officer's search of the storage trailer. We hold, however, that the exigent-circumstances exception to the warrant requirement does not justify the officer's search of the black bag or his seizure of the weapons in that bag, and that the trial court's denial of defendant's

3

motion to suppress constituted error. We reverse the Appellate Division's judgment and remand the matter to the trial court for further proceedings.

## I.

## A.

We summarize the facts based on the record presented to the trial court in defendant's motion to suppress and the State's opposition to that motion.[1]

Shortly before 9:00 a.m. on July 27, 2019, N.D., her adult daughter, B.V., and her adult son, J.V., appeared at the headquarters of the Borough of Highlands Police Department. They spoke with the two officers on duty that day, Captain George Roxby and Detective Nicholas Riker.

N.D. told the officers that she and defendant had been dating since 2015. She provided to the officers the address of the residential trailer in which she, her children, and defendant lived.

N.D. told the officers that defendant had assaulted her and showed them photographs of injuries that she said were suffered in that assault. She

[1] During oral argument before this Court, counsel for the parties acknowledged discrepancies between conversations recorded on the police bodycam video and the transcript of those conversations that was created after the video was played in the courtroom at the suppression hearing, and was part of the record of that hearing. We ordered a limited remand, directing the parties to agree on revisions to the transcript to the extent possible. By stipulation of the parties, the transcript of the suppression hearing was revised. We rely on the revised version of the transcript in this opinion.

presented to the officers screenshots of text messages, identifying defendant as the sender of some of the messages. Text messages that N.D. attributed to defendant contained threatening language directed to N.D. and her children.

N.D. reported that defendant had brandished two guns in front of her and her children. She said that defendant kept the guns, which he had inherited from his mother, in a "black drawstring-type bag in a closet behind the door" of the residential trailer. N.D., B.V., and J.V. gave written statements to the officers.

The officers contacted a judge, who entered a temporary restraining order against defendant pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35. The judge also issued a search warrant. The search warrant listed the address of the residential trailer where defendant and N.D. lived as the location to be searched. It stated that the "victim indicated that there are two handguns within the residence, specifically in the closet behind the front door of the mobile home," and ordered law enforcement "to search for the above described weapons and/or permits to carry a firearm, application to purchase a firearm and firearms purchaser identification card."

The officers referred N.D. to a Domestic Violence Response Team. N.D. signed a complaint against defendant alleging simple assault, harassment, and terroristic threats.

At 10:58 a.m. the same day, Roxby and Riker arrived at the residential trailer and knocked on the door. In an exchange captured on Roxby's bodycam video, defendant answered the door, and Roxby arrested him. Riker transported defendant to the police station.

With his bodycam continuing to record the events, Roxby entered the residential trailer to execute the search warrant. He searched the closet behind the door that N.D. had described but did not locate a black bag or weapons. Roxby opened the drawers of a dresser in the trailer and examined containers on the floor but found no bag or weapons. In a telephone call, Roxby requested that N.D. and her children be asked to join him at the residential trailer. He continued to search the trailer while he waited for them to join him.

Shortly thereafter, N.D. and her children arrived at the residential trailer. Roxby informed them that he had not located the weapons. In response to Roxby's apology about the mess he had left after searching the closet, N.D. stated, "[n]o, that's his stuff. I don't care." N.D. told Roxby that she was "scared" of the weapons and that she was not lying about them. Roxby assured her that he did not think she was lying and that he simply wanted to find the weapons. He continued to search the residential trailer.

Roxby and N.D. left the residential trailer. Outside, they joined N.D.'s children and another adult female family member, unidentified in the record.[2] N.D., evidently upset that the guns were not found, said that she did not know when she had last seen the black bag, noting "I'm scared. I don't go near it."

The bodycam recorded the unidentified adult female family member saying that "[h]e has a storage -- storage and stuff there and he has the shed." Roxby asked N.D., "[h]e has property in there too?" N.D. responded, "[t]here -- yeah. There's a whole bunch . . . of stuff in there." Roxby asked N.D., "[y]ou do have -- you keep your stuff in there also, right?" N.D. answered affirmatively in a response transcribed as "mm-hm." The bodycam recorded another comment by a female family member, "there's where he keeps his stuff in there." Roxby testified that the speaker was N.D.'s daughter, B.V., who "said something about them having property in an abandoned trailer that they share" and "a Jeep on the property that they had access to."

N.D. then handed keys to Roxby. With the assistance of N.D., B.V., and J.V., Roxby searched a Jeep parked outside the residential trailer but found no

---

[2] Because the bodycam was pointed toward the floor or the ground outside during most of the period in which Roxby searched for the weapons, the faces of N.D. and her family members were not captured on the video as they spoke to the officer. In his testimony at the suppression hearing, Roxby clarified which family members made certain comments recorded on the bodycam video.

black bag or weapons. N.D. then checked a location that she called "the shed" and reported to Roxby, "there's nothing in the shed."

Moments later, Roxby, N.D., B.V., J.V., and the unidentified female family member turned their attention to the storage trailer, located nearby on the same street as the residential trailer. Roxby asked, "[w]hat about in here?" N.D. replied, "[t]here's a whole lotta of stuff in there." Roxby asked N.D. and her children, "you guys keep stuff in there, right?" N.D. replied, "yes."

Roxby walked up the steps to the storage trailer. The door to the storage trailer was open, and the screen door was closed but unlocked. Roxby opened the screen door and entered the storage trailer, followed by N.D. The bodycam video revealed storage bins, gardening tools, an electrical cable, and other items on the floor of the trailer.

Roxby approached a counter. Referring to a black bag that was initially off-camera, N.D. exclaimed, "[t]hat's it. That's it. That's the, that's it." Roxby told N.D., "alright, relax." N.D. commented that "maybe I was wrong about the material of the bag," and Roxby reassured her, "[n]o, that's pretty much what it is."

Roxby then opened the bag. He removed a police badge, a black revolver later identified as a Smith & Wesson .38 caliber revolver, and a box of ammunition. Roxby placed each item on the counter. He then unzipped a

8

container within the bag and a silver handgun, later identified as a Raven Arms .25 caliber pistol, fell to the floor.  Roxby removed a magazine from the handgun and removed a bullet from its chamber.

Roxby asked N.D. "[w]hat else in here belongs to him?"  She responded, "[a]ll his mother's stuff.  All, and it's all mixed, but there's nothing else." After looking at additional items in the storage trailer, Roxby took the weapons and ammunition to police headquarters and secured them.

B.

1.

A grand jury indicted defendant for terroristic threats, N.J.S.A. 2C:12-3(a), receiving stolen property, N.J.S.A. 2C:20-7(a), and certain persons not to have weapons, N.J.S.A. 2C:39-7(b)(1).

Defendant moved to suppress the weapons found in the black bag in the storage trailer.[3]  The trial court held a two-day suppression hearing, at which Roxby testified and the bodycam video that he recorded was admitted into evidence and played in the courtroom.

The State contended that N.D. had apparent authority to consent to Roxby's search of the storage trailer and that N.D. consented to that search.  It

---

[3]  Defendant also moved to sever the charge of terroristic threats from the other charges, and the trial court granted in part and denied in part his motion.  The severance issue is not before the Court in this appeal.

also asserted that the doctrines of community caretaking and exigent circumstances justified the search because of the threat to public safety posed by the weapons.

Defendant argued that the only constitutional search conducted by Roxby in this matter was the search of the residential trailer. He asserted that N.D. had no apparent authority to consent to any search in the storage trailer, and that Roxby had ample time to contact a judge and secure an additional warrant for that trailer.[4]

In a written opinion, the trial court denied defendant's motion to suppress. The court concluded that N.D. had consented to the search of the storage trailer and the seizure of the weapons found in the black bag in that trailer. It found insufficient evidence to determine whether N.D. had actual authority over that trailer. The trial court concluded, however, that N.D. had apparent authority to consent to a search of the storage trailer, given N.D.'s and her daughter's statements to Roxby that they kept property in that trailer

---

[4] In a letter to the trial court submitted prior to the second day of the suppression hearing, defense counsel wrote that the landlord who owned the storage trailer granted defendant "exclusive permission to store his mother's property" in that trailer and that "[n]o one else had permission to store property in that house trailer." Defendant presented no evidence to support his counsel's assertion and did not contend that Roxby was aware of any claimed statements by the landlord when he searched the storage trailer on July 27, 2019.

and the fact that the door was unlocked when Roxby approached the trailer. The court also found that the black bag containing the weapons was in plain view. Although the trial court acknowledged that the parties disputed the question of exigent circumstances, it did not specifically address whether an exception to the warrant requirement applied to Roxby's search of the bag and did not consider the State's reliance on the community caretaking and exigent-circumstances exceptions to the warrant requirement.

The Appellate Division denied defendant's motion for leave to appeal the trial court's determination.

Pursuant to a plea agreement, defendant pled guilty to the amended charge of second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b)(1), but reserved his right to file an appeal pursuant to Rule 3:5-7(d). The remaining charges were dismissed. In accordance with the plea agreement, the trial court sentenced defendant to a five-year term of incarceration with a forty-two-month period of parole ineligibility.

2.

Defendant appealed the trial court's denial of his motion to suppress. He argued that even if Roxby's search of the storage trailer was justified by N.D.'s apparent authority to consent to that search, the search of the black bag stored in that trailer and his seizure of the weapons in that bag were

nonetheless unlawful. The State countered that Roxby's search of the bag was warranted by the exigent circumstances that Roxby encountered when he conducted the search, citing defendant's alleged threats against N.D. and her children, as well as the possibility that Roxby, one of only two officers on duty in a shore town on a summer weekend, might have been summoned away from the search for the weapons to address another emergency.

The Appellate Division affirmed the trial court's judgment. Noting the deferential standard governing its review of the trial court's factual findings, the appellate court found significant the assurance of N.D. and her children that they stored belongings in the storage trailer; the fact that the trailer and its contents were not secured; and the black bag's location in the trailer, visible to anyone who entered. The Appellate Division accordingly affirmed the trial court's determination that Roxby's search of the storage trailer was constitutional. The appellate court stated that it was not obligated to consider the specific search of the black bag because defendant had not challenged that search before the trial court. It briefly addressed that search, however, concluding that N.D.'s apparent authority to consent to the search of the storage trailer extended to the black bag found in that trailer.

3.

We granted defendant's petition for certification, instructing the parties to separately address in their briefs defendant's challenge to the search of the storage trailer and his challenge to the search of the black bag. 251 N.J. 502 (2022). We also granted the applications of the American Civil Liberties Union of New Jersey (ACLU) and the Association of Criminal Defense Lawyers of New Jersey (ACDL) to participate as amici curiae.

II.

A.

Defendant argues that N.D. did not have apparent authority to consent to the search of the trailer and that, even if she did, that authority did not extend to the black bag containing the weapons. He asserts that no exigent circumstances justified the search of the black bag or the weapons in that bag.

B.

The State argues that the information available to Roxby at the time of the search of the trailer indicated that N.D. had apparent authority to consent to the search of the storage trailer. The State does not assert that defendant waived his argument that the search of the black bag must be separately analyzed, or rely on the community caretaking doctrine. Instead, the State

13

maintains that the search of the black bag and the seizure of the weapons were justified by the exigency exception to the warrant requirement.

C.

The ACLU asserts that Roxby had a duty to investigate N.D.'s claim of authority to consent to a search, and that the record did not support the trial court's finding of apparent authority.

D.

The ACDL contends that N.D. had no authority to consent to the search of the black bag found in the storage trailer, and that no exigency justified Roxby's warrantless search of that bag.

III.

A.

We review the trial court's determination of defendant's motion to suppress under a deferential standard. "[W]e must 'uphold the factual findings underlying the trial court's decision so long as those findings are "supported by sufficient credible evidence in the record."'" State v. Nyema, 249 N.J. 509, 526 (2022) (quoting State v. Ahmad, 246 N.J. 592, 609 (2021)). That standard governs appellate review even when the trial court's findings are premised on its review of video or documentary evidence that is part of the appellate record; we uphold those findings unless the evidence contradicts them to an

extent that makes the findings "clearly erroneous." State v. S.S., 229 N.J. 360, 379-81 (2017). We review de novo the trial court's legal conclusions and its determination of the consequences that flow from established facts. Nyema, 249 N.J. at 526-27; State v. Hubbard, 222 N.J. 249, 263 (2015).

B.

The United States Constitution and the New Jersey Constitution guarantee against unreasonable search and seizure; both provide that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7; see also State v. Cushing, 226 N.J. 187, 198 (2016) (discussing the federal and state constitutional provisions); State v. Lamb, 218 N.J. 300, 314 (2014).

Accordingly, in order for a search to be constitutional, police officers "must obtain a warrant or show that a recognized exception to the warrant requirement applies." State v. Wright, 221 N.J. 456, 466 (2015). The State bears the burden to prove that a warrantless search falls within such an exception. Cushing, 226 N.J. at 199.

In this appeal, the State premises its argument on two exceptions to the warrant requirement. First, the State invokes the doctrine of apparent authority to consent as the basis for Roxby's search of the storage trailer. Second, the

15

State relies on the exigent-circumstances exception to the warrant requirement to justify the search of the black bag and the seizure of the weapons. We consider each in turn.

C.

1.

"[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973); accord State v. Domicz, 188 N.J. 285, 305 (2006).

In certain settings, a person other than the defendant may validly consent to the search of the defendant's home or property. See United States v. Matlock, 415 U.S. 164, 171 (1974) (holding that a person other than the defendant "who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected" may consent to a search of the premises or property); State v. Suazo, 133 N.J. 315, 320 (1993) ("[V]alid consent may be obtained from one other than the accused."); State v. Coyle, 119 N.J. 194, 215 (1990).

As the Supreme Court stated in Matlock, however, a third party's authority to consent is "not to be implied from the mere property interest a third party has in the property, . . . but rests rather on mutual use of the

16

property by persons generally having joint access or control for most purposes." 415 U.S. at 171 n.7; see also Fernandez v. California, 571 U.S. 292, 299-300 (2014) (reaffirming the principles stated in Matlock); Cushing, 226 N.J. at 200 (noting this Court's application of "the consent exception to third parties who possess actual authority based on their common use of the space searched"); State v. Coles, 218 N.J. 322, 340 (2014); Suazo, 133 N.J. at 319-20.

In this appeal, the State does not base its claim on N.D.'s actual authority to consent to the search of the storage trailer, but on her apparent authority to do so. As we have observed, "in recognition of the many factual settings that confront a law enforcement agent, an officer may, depending on the circumstances, rely on the apparent authority of a person consenting to a search." Cushing, 226 N.J. at 199; see also Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (recognizing the doctrine of apparent authority under the Fourth Amendment). We noted that "[a]pparent authority arises when a third party (1) does not possess actual authority to consent but appears to have such authority and (2) the law enforcement officer reasonably relied, from an objective perspective, on that appearance of authority." Cushing, 226 N.J. at 199-200 (citing Rodriguez, 497 U.S. at 185-89).

17

Thus, the question that the trial court was charged to resolve was "whether the officer's belief that the third party had the authority to consent was objectively reasonable in view of the facts and circumstances known at the time of the search." Coles, 218 N.J. at 340 (quoting Suazo, 133 N.J. at 320); see also State v. Sutherland, 231 N.J. 429, 437 (2018) (holding that a police officer's belief that a third party has apparent authority to consent need not be correct, but it must be reasonable).

2.

Applying that standard, we consider the information known to Roxby about N.D.'s nexus to the storage trailer when he entered and searched the storage trailer.

First, N.D. and her daughter B.V. told Roxby that N.D. had common authority with defendant over the storage trailer. Roxby testified that B.V. "said something about them having property in an abandoned trailer that they share," and that he believed that N.D. and her family members had said "that they all keep belongings there earlier." Roxby's testimony was corroborated by the bodycam video. In the video, the unidentified female family member told Roxby about the storage trailer and stated that defendant kept property in that trailer. Roxby then directly asked N.D. whether she also kept "your stuff" in that trailer, and N.D. answered in the affirmative. Moments later, as Roxby,

18

N.D., and the other family members approached the storage trailer, Roxby asked whether "you guys keep stuff in there," and N.D. again replied in the affirmative. Roxby's inquiries directly addressed N.D.'s nexus to the storage trailer; N.D.'s answers and her family members' comments underscored her access to and authority over that trailer.

Second, text messages that N.D. provided to Roxby and Riker -- including those identified as messages from defendant to N.D. -- indicated that the residential trailer was N.D.'s home before defendant lived there. Text messages attributed to defendant referred to the residential trailer as "ur disgusting trailer," promised "I'm gone so u n ur . . . kids can come run[n]ing home," and asserted that when defendant departed N.D.'s home, he would move to "a very big house." By virtue of those text messages, Roxby had evidence that defendant considered the residential trailer to be N.D.'s, that N.D. had lived in that trailer and the community longer than defendant had, and that he planned an imminent move out of her home. That evidence suggested N.D. had joint authority over the storage trailer located near her home.

Third, when Roxby approached the storage trailer, the main door was open and the screen door was unlocked, either because the doors had been left open or because N.D. or a family member had unlocked them for Roxby.

19

N.D.'s access to the storage trailer constituted a further indication that she had joint authority over that trailer.

Considered in tandem, those factors support an objectively reasonable conclusion that N.D. had authority to consent to a search of the storage trailer. Roxby reasonably relied on N.D.'s and B.V.'s responses to his inquiries about their access to and use of the trailer, the text messages, and the unlocked doors of the storage trailer.

We therefore concur with the trial court and the Appellate Division that N.D. had apparent authority to consent to the search of the trailer.

D.

1.

Our determination that N.D. had apparent authority to consent to the search of the storage trailer does not resolve the question whether Roxby's search of the "drawstring-type" black bag found inside that trailer and his seizure of the weapons were constitutional.

A third party's authority to consent to a residential search gives the police "the right to seize any evidence that was in plain view," but "[a] third party who has common authority over the premises might nevertheless lack common authority over the items therein." Coyle, 119 N.J. at 217; see also State v. Marcellus, 472 N.J. Super. 269, 275-77 (App. Div. 2022) (observing

20

that a third party's authority to consent to a search of a residence may not "authorize a search of 'those possessions of defendant that were not in plain view,' or to peer into closed containers" (quoting Coyle, 119 N.J. at 217)); State v. Allen, 254 N.J. Super. 62, 67 (App. Div. 1992) ("Even where a third party has authority to consent to a search of the premises, that authority does not extend to a container in which the third party denies ownership, because the police are left with no misapprehension as to the limit of [the third party's] authority to consent." (quotation omitted)).

As we have noted in the setting of an automobile search, "in the absence of evidence of joint access to or control over property found in the vehicle, a driver's apparent authority to consent to a search of the car does not include the authority to permit a search of the personal belongings of other passengers." Suazo, 133 N.J. at 321; see also State v. Maristany, 133 N.J. 299, 306 (1993) (citing decisions by federal courts and appellate courts in other states determining "that a driver's authority to consent to a general search of a car does not necessarily include the authority to consent to a search of every container found within the vehicle").

2.

Given the unrebutted evidence in the record that the closed black bag found in the storage trailer was exclusively the property of defendant, the State

21

does not contend that N.D. had apparent authority to consent to the search or seizure of that bag. To justify the search and seizure of that bag, the State relies on the exigent-circumstances exception to the warrant requirement.

"Exigent circumstances may excuse the need for the police to obtain a warrant." State v. DeLuca, 168 N.J. 626, 632 (2001); accord State in Int. of J.A., 233 N.J. 432, 448 (2018). The exception authorizes a warrantless search when police officers have an "objectively reasonable basis to believe that prompt action is needed to meet an imminent danger." State v. Hemenway, 239 N.J. 111, 126 (2019) (quotation omitted).

As we have observed, "[p]olice safety and the preservation of evidence remain the preeminent determinants of exigency." J.A., 233 N.J. at 448 (alteration in original) (quoting State v. Dunlap, 185 N.J. 543, 551 (2006)). In the typical setting in which our courts have found exigency, "there was an objectively reasonable basis to believe that lives might be endangered or evidence destroyed by the delay necessary to secure a warrant." State v. Manning, 240 N.J. 308, 337 (2020). In such cases, "time was of the essence, and delay was not a reasonable option." Ibid.

Generally, to "invoke[] the exigent-circumstances exception to justify a warrantless search, [the State] must prove by a preponderance of the evidence that (1) the search was premised on probable cause and (2) law enforcement

22

acted in an objectively reasonable manner to meet an exigency that did not permit time to secure a warrant." Id. at 333; accord J.A., 233 N.J. at 448. "Similar to probable cause, 'the term "exigent circumstances" is, by design, inexact. It is incapable of precise definition because, by its nature, the term takes on form and shape dependent on the facts of any given case.'" State v. Nishina, 175 N.J. 502, 516 (2003) (quoting State v. Cooke, 163 N.J. 657, 676 (2000)).

Nonetheless, we have identified a non-exclusive set of factors to be considered in the court's inquiry:

> (1) the seriousness of the crime under investigation, (2) the urgency of the situation faced by the officers, (3) the time it would have taken to secure a warrant, (4) the threat that evidence would be destroyed or lost or people would be endangered unless immediate action was taken, (5) information that the suspect was armed and posed an imminent danger, and (6) the strength or weakness of the probable cause relating to the item to be searched or seized.
>
> [Manning, 240 N.J. at 333-34; accord State v. Johnson, 193 N.J. 528, 552 (2008).]

The determination whether exigent circumstances existed at the time of the disputed search "is fact-sensitive" and requires the court to assess "the totality of the circumstances." J.A., 233 N.J. at 448.

23

## 3.

We apply those factors to the circumstances that Roxby encountered when he searched for the black bag in the storage trailer.

The first factor -- the seriousness of the crime under investigation -- favors the State's position. Roxby was investigating allegations of domestic violence, an offense recognized by the Legislature to be "a serious crime against society" that endangers "the health and welfare of some of [New Jersey's] most vulnerable citizens." N.J.S.A. 2C:25-18; see also State v. Harris, 211 N.J. 566, 579 (2012) (noting the legislative objective to combat the problem of domestic violence); Cesare v. Cesare, 154 N.J. 394, 398 (1998). Defendant clearly was under investigation for serious offenses.

Addressing the second factor -- the urgency of the situation faced by the officers -- the State argues that (1) Roxby faced urgent circumstances because defendant might have retrieved the weapons in the bag had the officers taken the time to secure a search warrant, thus endangering N.D., her family, and others; and (2) Roxby was one of only two officers of the Borough of Highlands Police Department available to handle emergencies in a busy shore community on a July weekend. Neither contention is persuasive.

N.D. and her adult children made clear to Roxby that they feared defendant and worried that he might recover his weapons and harm them.

24

Indeed, N.D. urged Roxby to expedite his search for the weapons and appeared distraught when those weapons were not immediately found. When Roxby entered the storage trailer, however, defendant was under arrest and detained at the Police Department for processing pending his transfer to county jail. There was no realistic basis for concern that if Roxby paused to contact a judge and requested a warrant, defendant would be in a position to retrieve his weapons from the storage trailer pending the judge's issuance of that warrant.[5]

Although it is possible, given the police department's minimal staffing on the day of the search, that Roxby could have been called away for an emergency while he waited for a warrant, he could have ensured that the storage trailer was locked during his absence and returned after a warrant was issued to seize the weapons.[6]

---

[5] The setting of this appeal is distinct from the emergent circumstances that police officers encountered in State v. Pante, 325 N.J. Super. 336, 352 (App. Div. 1999), in which the discovery of explosives in a home signaled a risk that more explosives would be found in the bedroom that was searched without a warrant. The situation that Roxby confronted, moreover, is different from the "public emergency and . . . law enforcement nightmare" encountered by police officers in State v. Wilson, 362 N.J. Super. 319, 333 (App. Div. 2003), in which a missing weapon following a shooting near the Atlantic City Boardwalk gave rise to "the real danger that not only would evidence of a crime be lost but also that an automatic handgun could fall into malevolent, untrained or immature hands." There was no such imminent danger here.

[6] This appeal does not involve the emergent circumstances raised in State v. Zalcberg, in which the few officers on duty in a small police department confronted "a fatal accident with multiple serious injuries, the absence of an

The third factor -- the time that it would have taken to secure a warrant -- does not favor either party's position. Roxby had the telephone number of the judge on emergent duty that day and was in a position to initiate the process of obtaining a warrant without delay, but the record includes no evidence of the amount of time that process would have taken.

The fourth factor -- the threat that evidence would be destroyed or lost or people would be endangered unless immediate action was taken -- does not support a finding of exigent circumstances. Again, defendant was under arrest and would shortly be incarcerated. He was therefore not in a position to retrieve, use, or conceal the weapons pending the issuance of a warrant, and there is no evidence in the record that he could have secured the assistance of a third party who had a key to the storage trailer.

The fifth factor -- information that the suspect was armed and posed an imminent danger -- similarly weighs against a finding of exigency. Roxby had no information indicating that defendant was armed and dangerous; to the contrary, he knew that defendant was unarmed and in custody and would not be immediately released.

---

established telephonic warrant system," and the high risk that that the intoxication evidence in question would dissipate before a warrant could be obtained. 232 N.J. 335, 352 (2018).

The sixth factor -- the strength or weakness of the probable cause relating to the item to be searched or seized -- supports the State's position. Given the statements of N.D. and her children, there was probable cause to believe that the black bag contained weapons and that defendant unlawfully possessed those weapons.

Weighing those factors, we conclude that the State did not prove its claim that exigent circumstances justified the warrantless search of the black bag and the seizure of the weapons. With defendant under arrest, Roxby had the opportunity to apply for and secure a warrant to search the bag and seize the weapons within it. The circumstances facing Roxby were not so urgent as to obviate the need to obtain a warrant.

Accordingly, we do not concur with the Appellate Division that the State met its burden to justify the search of the black bag and the seizure of the weapons by an exception to the warrant requirement. Defendant's motion to suppress the weapons seized through that unlawful search should therefore have been granted. Because those weapons constituted the central evidence against defendant on the charge of unlawful possession of a weapon, defendant's conviction must be vacated.

27

IV.

The judgment of the Appellate Division is reversed, and this matter is remanded to the trial court for further proceedings in accordance with this opinion.


CHIEF JUSTICE RABNER; JUSTICES PIERRE-LOUIS, WAINER APTER, and FASCIALE; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE SOLOMON did not participate.